Thank you, Your Honor. I'd like to reserve three minutes for rebuttal. My name is Scott Powerson. I represent Osure Brown. Osure Brown had filed this suit, and his claims were dismissed on a motion to dismiss. The two rulings that I think are important for the Court to consider is, the first is the ruling on the statute of limitations for the Fair Debt Collection Practices Act claim. The Court applied the decision in Nass and said that because the first opportunity, or the last opportunity, to correct the error was when they sent out in March of 2019, when they sent out a complaint. That's interesting that you say, last opportunity to correct the error. Well, that's what he ruled. What's the language, actually? Last opportunity to… To comply with the FPCPA, I'm sorry. No, that's a big difference. Because one would indicate that it's kind of your last opportunity before you break the law, right? The other is, you've already broken the law, and it's sort of your last opportunity to rectify. And the problem with the latter rule is, I mean, I don't see any limit to that. Every new action that you make, say, in litigation, would be a last opportunity to affix your error. But last opportunity to comply seems to indicate something different. It's your last clear chance, so to speak. Yes, and I was going to say, I'm probably going to keep screwing that up and say, last clear chance from law school. But here's the point here. In NASS, the only allegations were that the filing of the complaint was a violation. Here, there were additional violations, and I'll explain. And this is where the Damaris case comes in, because it talks in terms of that you have to analyze each allegation of the violation. And so in this particular case, when they sent the March 2019 complaint, it did not have affidavits. It didn't have anything. So at that point in time, there might have been a violation of 1692E2 about false statement, or E5, which is asserting a right that you don't have. But what wasn't present at that time was a violation under 1692E10, for instance, which is basically using false statements or means to collect a debt, or under 1692F, which is using unfair or unconscionable means. So those claims had not accrued at the time of the March. Why are those latter two provisions not implicated by a complaint, assuming the complaint, of course, is? Well, you have to go into the details as to what the basis of the complaint for those particular violations were. The basis for those particular violations was that they were submitting affidavits that were falsely stating that they were being made based on personal knowledge. They first appeared when they went ahead and filed the actual complaints. Washington State has this procedure. Maybe you all are familiar with it, but apparently you can send out a complaint beforehand before it's actually filed. Then they proceeded on April 5th of 2019 to file a complaint, including an affidavit, and that's when the cause of action under E10 and F would accrue. Because prior to that, there were no affidavits to complain about using false or an unfair and deceptive practice. What's the basis for your claim under the FDCPA? The basis for our claim is that they were filing these actions, including affidavits claiming that the person had personal knowledge of the facts that were being set forth in the affidavits when, in fact, they did not. And that's the claim that was in the complaint when filed? Yes. But my point is you've got to look. Can I make sure you answer? Sure. Is it in the complaint or you're saying it was in the affidavits that were attached to the complaint when it was filed? That's what you're saying, right? Oh, I'm sorry. My point is it's not actually in the complaint itself, and all that was served was the complaint. That's right. And when they filed the complaint, it had these affidavits, and that's where all the false stuff is at is what you're saying. Correct. And then, and going back to the Damaris VIII Circuit case that we cited, which none of the defendants even discussed, it points out that the reason for this rule is because, in essence, what happened here when they did the, when he applied NAS, he made it not only the last opportunity to make sure to comply, but he also made it the first violation would cover any future violations, and that's what Damaris gets into, that that is not, they cite from the Tenth Circuit saying you can't immunize them from doing further things. So in Damaris, for instance, what happened was they went ahead and the court in Damaris said, after they filed the complaint, there were additional violations, including that the plaintiff showed up for trial and claimed that they were going to proceed with the case when he knew he didn't have any evidence or witnesses to go forward. Let me ask you a question that changes the analysis or might change it slightly. The first act is service without filing. Correct. If there had never been any filing, there's never any lawsuit. Right. So you don't get a lawsuit going forward until there's been a filing of that complaint. Right. So what I'm asking is, I didn't ask my question. Okay. Sorry. Let's assume that the complaint that was served is identical to the complaint that is filed. Right. What I'm wondering is if that is nonetheless not a new violation because you've escalated. That is to say, if all you have is service, you don't have a lawsuit. You get a lawsuit once you've filed. So is it enough that we have the two steps, even if the complaint is the same at the time of service and at the time of filing? Correct, Your Honor. And going back to the language, when they decided to actually file it with the court, they had the opportunity not to do that, the last chance, last opportunity to comply. Right. But they've already not complied by doing the complaint. I guess the question is, what more does the filing do? Assuming, I think your argument before was that, no, the complaint's different now. The complaint's got actually the false stuff attached to it. But assume that's not true and they're exactly the same, as Judge Fletcher was saying. If we assume that, what is the filing doing that's ‑‑ what happens because of the filing that's different than getting the ‑‑ Well, because prior to ‑‑ well, for instance, put in the context of the FDCPA, the fair debt, for instance, they're taking an affirmative action to assert a right that they didn't have, which is filing the lawsuit. I thought the consequences for filing a lawsuit can be quite severe. Right. And before that, if you just pick it up immediately, you know, it's ‑‑ Right. I'm not arguing with you, and I apologize. I didn't mean to interrupt you. But here's my point. It's substantially ‑‑ it's one thing. If I send you a letter demanding you pay me, that's substantially different than if I serve you with a filed lawsuit. That means I have to now do something. If you serve me with a filed lawsuit. But if you serve me with a law ‑‑ I mean, for a typical layperson, I assume, if they get served with a lawsuit, they probably don't even know whether it's filed or not. They're just like, this looks very official and it's kind of terrifying. And so I could see why that would be, if, let's say, there were false statements in the lawsuit. Let's say these affidavits you're talking about were attached to the service. And so you've done the bad things that would trigger FDCPA. Then why would not, you know, at that point, you've ‑‑ the same way if you just sent a threatening letter with lying stuff, that would trigger FDCPA. So why would that not trigger? And then I'm just trying to figure out what's worse about the filing. Well, what's worse about the filing is basically in the Damaris case, for instance, that's what they keyed in on. You've got to understand that there's ‑‑ see, most of the cases talk, and the reason Damaris is so important, most of the cases just sort of generically refer to FDCPA violation. They don't go into detail. But there's a substantial difference between an F claim and an E claim under 1692F versus 1692E. For instance, in Damaris, they talk about 1692F is an unfair and unconscionable manner in which you try to collect the debt. It doesn't require any false statements or anything. It's just an unfair manner that you try to collect the debt. Filing the lawsuit with an affidavit that's false might also fall under the 169210, E10, for instance. But my point is ‑‑ It sounds like your argument is not only that sort of the argument that would apply in all instances, which is, you know, there's always a difference between service and filing is just kind of always worse than service if it's the exact same. Your argument is depending ‑‑ you seem to be depending strongly on the fact that, no, it created a whole new claim when they filed this because that's when they provided the false stuff. That's part of it. My real point is that there's different violations that can occur, and it's unfair to measure the time limit. Like, for instance, when they filed in March 2019 and I wanted to sue them, I couldn't sue them for an F violation. I couldn't sue them for E10, for instance. Because they hadn't made a false statement at that point. Right. The grounds for it. So by putting it back to that date, it gives them exactly what the 10th Circuit warned about, which is giving them free rein to make any sort of allegation. I got a couple of questions for you. Sure. Let me ask you this. First, I want to pick up on a question that Judge Fletcher asked, which is service of the complaint. Right. I mean, it is possible, isn't it, that a debt collector could serve a complaint without any intention of really filing the complaint? And that's another. That would possibly be better. Couldn't that be a separate violation? I mean, it scares the heck out of people. Absolutely. And going to Judge Van Dyke's point. I had a neighbor not too long ago come to me and say, I'd serve with a complaint. And as a practical matter, most lay people, the people I represent, consumers, they also believe there's some criminal element, that they're going to go to jail over it. So they don't even understand there's a distinction between civil and criminal, just from my experience. It scares people. So, I mean, that could be a violation. And it's designed to scare them. Exactly. And then once they do file, going back to your question, once they do file, then they get to enlist the court's procedures requiring subpoenas, requiring to show up for court, being told that if they don't show up for court that a default could be entered. So it's a world of difference of an unfiled suit versus . . . I know more stuff happens. What I'm struggling with is I agree with I think everything that's been said, that the interim effect of the actual service. And what I'm trying to see is, yes, there's definitely more stuff that happens when you file. I mean, you end up in a lawsuit. But I'm trying to figure out . . . I also think . . . I mean, I don't know that . . . Is it your argument that necessarily if you hold a deposition, that that's another act that would not reset . . . it's the wrong word, but would be a new statute of limitations? No, it depends whether it falls within the categories. And it's why I'm being very specific. And I think if you look at the Damaris case, you'll see. Like, for instance, in that case, the court found the fact that the attorney showed up and said that they were going to go forward with the case. The judge said, well, that's another violation. That's a separate, distinct violation. And we're not going to charge them with the statute of limitations of an event that happened six months earlier because they're not getting the full year that they're entitled to to bring that claim. That's what happened here. And all you have to do is look at the Tommy Brown case that we submitted under 28J. Tommy Brown is Osher Brown's father. And the court very clearly there, in denying the motion to dismiss, looked at the FDCPA claims. It's a different context. But my point is, if you look at Headnote 18, he lays out very distinctive acts. Like in this case, besides the initial affidavits, then they came back with subsequent affidavits. And they sent in new affidavits and made new false statements on behalf of another affiant. So this idea that we're, you know, he turned under Nass, he turned in the last opportunity into the first violation controls all future. And that's just wrong. You've got separate violations now over my time. I just want to go back for one second about what was alleged in the complaint that was filed in state court and then your FDCPA complaint. Right. Okay. So what did you allege in the FDCPA complaint that was a violation with the filing of the complaint, the original complaint in municipal court? Right. We allege the actual filing because the filing took place on 4-5-2019. We filed our complaint 4-5-2020 in just four states. Right. And that claim, because the false claim was that they were entitled to enforce this loan against our client, that that was the false statement separate and apart from the affidavits, that they did not have the right that they were seeking under E-5, 1692E-5. They were asserting a right that they didn't have because they didn't really own the debt. And keep in mind, not only did we allege it. So then later on, so as the litigation progresses, they file the affidavits and they – Well, they filed an initial set of affidavits with the complaint and then they filed subsequent affidavits during the course of that case. And just so you know, the idea that ultimately our argument that they did not have the requirements, they didn't meet the requirements, was ultimately confirmed by the state court judgments in favor of our client. So it's not – But for your purposes, if the statute of limitations were to run from the filing of that complaint, you're home free. Correct. But not from when it was first served. Yeah. But again, I don't think you can measure all of the violations from the first violation. That's not what Nass said. I'm sure that's right down to your time. Yeah, I'm sorry. I'll make sure you have a little bit of time for Bob. But I want to follow up on one of Judge Pai's questions, which is he was asking what you had alleged when you – because you did it basically on the anniversary of the filing. Right. And you had said that the filing itself was a false statement because they're saying they're entitled to something that they're not. Did you also allege these affidavits in this? Yes. Did you talk about the affidavits in your complaint? Yes, including the later ones. So the early ones we alleged, but we also included the later ones as well. So the later ones hadn't been filed yet, or had they been filed? Well, they hadn't been – they had been filed by the time we filed our suit. They had been filed. Because they were filed in that one period of time. Right. Yeah. So that's all in your complaint. You've got the fact that they filed the lawsuit. Yes. You've got the fact that they included these affidavits with the lawsuit, and then you've got the later affidavits all in your complaint? Correct. And we – so I didn't get a chance to talk about walls, which is the second issue. Oh, yeah. We'll make sure you have a little time for rebuttal, unless my colleagues have further questions. Now we'll hear from the other side. Thank you. Good afternoon. Justin Holmes for Transworld Systems. I think I would like to first correct a premise that we were discussing a moment ago. In Washington, a lawsuit commences either upon service or filing. Yeah, but that's a very different question. That's the question is when does the statute of limitations hold for when you're suing under the particular cause of action of which you're suing? This is a question as whether or not the suit violates a separate statute. Those are two very different questions. Well, then I think what you're now inviting, Your Honor, and I understand you, I believe, but we're now looking at what activity occurs during litigation, which might be repetitive of what was alleged in the complaint, at every step of the case, and I think it was mentioned with every subpoena that is served. You don't have a case until it's filed. I understand, Your Honor. I understand. But the timing does – I mean, if you apply NAS, and I think NAS understands the premise that different activities or activities that occur during the litigation, difficult to manage. We're not going to ask another court to come in and review those actions at every step of the case. You can review them if there are separate violations that occur, but we're going to go back and look to when that lawsuit was initiated, and that's the language. Initiated to me sounds like filing. It sounds like filing. It does. It also, I would suggest, sounds also like service. But service, the case you're after is telling me when do you toll the statute of limitations in the suit under which you are bringing suit. That's a very different question as to whether or not service or filing is a violation of a very separate statute. Yes, Your Honor. Can I ask the committee to confirm or not your opponent's statement that when it was first served, it did not have these affidavits that had these false statements in it? Was it served with or without the affidavits? Do you know? Your Honor, I don't believe that fact is in the record. My understanding was that the affidavits were included. Now, I don't think it matters because I think the complaint itself is, or that they are bringing, is that the state court collection suit was brought fundamentally on concealed information. What did we conceal, allegedly? Concealed whether or not the debt was still due and owing because it had already been discharged in bankruptcy. We were concealing information, allegedly, that pertained to that issue. That is what the complaint is about, and that is what the affidavits that were filed, whether they were included with the complaint or filed later when the complaint was filed, those are the same allegations, a concealment of information. Concealment of information. The same conduct that allegedly occurred with it. Are you saying that those affidavits had affirmative misrepresentations in them that people were making statements based on personal knowledge that they actually were not making based on personal knowledge? I don't believe that that is what the complaint alleges. I believe the complaint alleges, first, that this case is entirely about collecting on a debt that was discharged in bankruptcy, but as to the concealment allegations, consistently throughout the complaint, the concern, the allegation raised in the amended complaint, I believe at paragraph 57, for example, is that information was concealed. That is the only violation that they really alleged, in fact. Now, they've raised whether or not different parts of the statute apply, but their factual allegation in paragraph 57 is that information was concealed. And to your point, I believe, earlier, how do you evaluate a concealment? Is it different than evaluating a misrepresentation? Because a concealment does happen every day that the lawsuit continues. Every day that that lawsuit is not dismissed is arguably another concealment. And I think that's why NAS wants the court or guides the court to the beginning of the lawsuit. First, because otherwise we're managing, we're reviewing everything that happens during litigation, which I don't think is the intended purpose. But also, I think if you looked at the statute itself and some of the comments that I believe the Clem decision made by the Supreme Court rotesti, you look at when the violation actually happened. Here the violation actually happened when the lawsuit was served. That's when they were injured. And that's because of Washington law that says the litigation begins when? I don't think so. When service is completed. I don't think so. I think that that's when the communication happened. And so that is when the communication happened with the consumer. That is when the consumer suffered. Would you agree that service can, by itself, be a separate, distinct violation of? Yes, I would. I would agree with that. A separate and distinct, but not different than the filing of the complaint. If the communications in the complaint, as filed, are exactly the same as the communications in the complaint as served, that is, I mean your question was whether the service is a distinct act, and it is in a vacuum. But then when the subsequent acts occur, those are things taken to maintain the lawsuit. You do that every day. A copy of the complaint was mailed to the consumer. That's a step taken in furtherance of the lawsuit, a step to maintain the lawsuit. So let me ask you this. Judge Van Dyck has had a lot of questions about the significance of filing. In your view, what is the significance of filing? Just another step in the lawsuit? I agree with that. That is another step in the litigation to maintain the litigation. Now— So you don't think that filing a complaint could be itself a separate and distinct violation? Not separate and distinct from the service of the complaint if the allegations in the complaint, as filed, are identical to what was served and communicated to the consumer prior. Why do you give that answer when the consequences of mere service are quite different from the consequences of service followed by filing? I don't believe that the act, the FDCPA, looks at the consequences of those things. They look at when the communication occurred and whether there was a violation at that time. Are you arguing that in one of these cases you can only have one violation? You can't have repeated violations? I am arguing, Your Honor, that the violations that were repeated were the same conduct that was embodied in the service of the complaint. So you're saying that service of process is identical to filing, but that's clearly not true in many respects. If you serve and never file, there's no lawsuit ever. Those are different things. The wrongdoing is the same. Why is it the same when the consequences are so different? Because the communication is the violation of the FDCPA. The communication with the consumer, that occurs at either time. So you're saying it's really the same for purposes of violation if I say, I am going to sue you, and then later I actually sue you. Statute of limitations run not from when I bring the lawsuit, but when I say I'm going to sue you. And just for clarification, Your Honor, is that a communication outside of service? Well, no, service is statement, I am going to sue you. That's what that really means. Okay. Well, those are different acts. I acknowledge those are different things that happen, but I still believe, and I think this is a part of, again, what NAS is recognizing, is that we're grappling with these issues, and we'd have to talk about each individual thing that happens during a litigation. Not necessarily. I think we have a pretty bright-line rule that once the service has been accomplished and the complaint is filed, bingo, anything that happens during the litigation from the suit that has now been perfected, there are no new violations. That's not the question we're asking. We're asking whether or not it's a new violation when filing takes place when there's previously been only service. I understand. So are you arguing for an absolute bright line that the filing in a series like this where you have the service and then you have the filing, that you could never . . . I mean, let's say they served you with a complaint, but then when they filed it, it had false records of the fact that you're a hardened criminal and the head of some cartel and all this stuff attached to it, and trying to scare you into . . . Or let's say later in the litigation, you know, in the course of . . . I think we have a case where they ask for answers and they just have lies in there. And so what is your position? Is your position that it could never be or that it's not in this case? And what could cause . . . I understand that question, Your Honor. And my argument is it can be the case. And in the McCullough case, I agree with that. But look at the accident issue. One was filing the complaint in the McCullough case, and I think demanding attorney's fees, and maybe the case was beyond the statute of limitations. That's one thing that happened. Then when the request for admissions were served, those requests for admissions were asking that consumer to concede facts that were untrue, which the lawyer who filed the complaint knew were untrue. So I think I . . . Those are different. I have your position, so I want to make sure . . . So how does that work in an actual case? So if your position is that it could be, the filing could be, and in some case the filing could be another act, whose responsibility . . . Is it their responsibility to plead facts about the filing that would indicate that it's doing something different? In other words . . . Because my understanding is I had my clerk go look to see if your . . . Can the actual filing of the complaint hurt your credit in the way that getting service doesn't? And it sounds like it could, but it's unlikely because of some agreements that were entered into by a bunch of states and such. So it's unlikely the actual filing is going to hit your credit. I think if it did hit your credit, and service didn't, then that would be . . . So whose responsibility is it to actually tell us whether or not something . . . There was some false statement or something bad happened from the filing? I think that is the plaintiff's obligation to allege what the facts are in the injury that he or she sustained. There has been no allegation of any injury from the conduct that we're talking about now in terms of the filing of the complaint versus the service. Whether you call it an injury or not, I think a response of someone who's been served with a complaint that has not yet been filed is going to be different from the response once the suit is actually filed. Correct? Yes, Your Honor. Whether you call it an injury or not, different actions will follow if there's only been service compared to when there's been service plus filing. Different actions are going to occur throughout the lawsuit. Right. But they could all be . . . I get that, too. But it's not as though the consequence for the person who's being sued is the same merely from the service compared to service plus filing. Well, it could be we won't know until that plaintiff alleges those facts for us, and they haven't done that here. Are we . . . I see that I'm beyond my time. I hear your answer. We'll go ahead and let your colleague speak. Thank you. Good morning. May it please the Court. I'm Albert Rodov, Jones Day, on behalf of U.S. Bank, and I'm also arguing this morning on behalf of the Trust. Argument thus far has focused on the statute of limitations issues as it relates to Mr. Brown's count one under the FDCPA, and I believe that another portion that Mr. Barson, had he had time, would have brought up was how the Walls case may affect count one under the FDCPA. However, the outcome on count one does not affect either the bank or the defendant trust. Regardless of how the Court might rule on the various arguments on count one, both the bank and the trust, their dismissal should be affirmed, and I can explain why. First, U.S. Bank was not named in any substantive count in Mr. Brown's complaint. It was only named in count two, which was a declaratory judgment action tied into count one. As the District Court ruled, a naked declaratory judgment and injunction claim does not stand without more. The same is true in count two as to the trust. As to the trust, they were not named in the FDCPA claim. They should also be dismissed there, so we would ask that you confirm on that basis. In terms of count three, which is also only against the trust, I do not believe that that raises any of the Walls' FDCPA questions that you may need to confront in count one. That only raises the Walls' no implied private cause of action issue, which is not challenged in any way and not questioned by other courts. So we believe you can affirm the dismissal of the trust on that basis as well, which of course brings us to count four, also asserted only against the trust, and that would also fail as a naked, stand-alone declaratory judgment request without more. Of course, Mr. Brown does not address the implied private right of action issues at all, and we think that he has not been able to salvage counts two through four for those reasons. If the court has any other questions as to the bank or the trust on count two to four, I'd be happy to answer them for you now. Thank you. You heard that they kind of didn't think that there was any difference between what was filed and what was right. They're wrong. But you're correct when you said that the credit reporting agencies have agreed to stop reporting, but that doesn't affect if I go to buy a house, they do a search of the court record. So it could still impact people that the case is filed. That's why I kind of asked the question about, I mean, in theory it could, but, like, is it your job to plea? I mean, do we just say, well, in theory there could be a difference between service? And if we were to do that, it's hard for me to see how we wouldn't say, in theory, there could be a difference between something that happens from filing versus what happens from discovery, say. But I think we have to actually show that it has an impact. Right. And that's, go back, not to harp on it, but the Eighth Circuit does address that. That's why they said the fact that the lawyer came in and said that they would go forward. Here, similar things. They renewed, they brought in new affidavits from someone else to try to show, which made the same statements, and claimed that, you know, the affidavits that we were only saying that they omitted things. We also said, for instance, in Paragraph 61 of our complaint, which is in the record, Paragraph 62, Paragraph 61 says that the service was just of the complaint, and then subsequently, when they actually filed it, they served copies of the affidavits with the complaint. So for the record, that's what's before. But the big picture here is they're basically saying we should be allowed carte blanche, and nobody says that they should be allowed carte blanche, that once they do one violation, that suddenly they have the right to continue to do violations. That's exactly what, you know, the Said case. I mean, he conceded that, for instance, if they lied about requests for admissions, well, that means that they don't have carte blanche, but that's what they're asking for. They're saying, let's pick a date of one activity, and everything we do after that, we can't be sued for because it's all going to be measured by this prior date when the claims hadn't even accrued. That's what we're talking about here. On WALS, let me just address that because one of the things, first of all, WALS is obviously a big issue in this sense, but one thing I want to point out about WALS, in deciding WALS, the court said that the issue of discharge violations was a core proceeding. Core proceedings are defined by Statute 28 U.S.C. 157 2B. It sets forth exactly what's covered as a core proceeding. Discharge violations is not an identified core proceeding. Why that matters? Because under the same statute, under Part C, that means that the bankruptcy judge cannot make a final decision on a claim under that. He can only do a report and recommendations like a magistrate. So here's what I'm leading up to. I think I might cut you off. You ran a little bit over, and I think we have your argument on those issues from the briefing. So unless my colleagues have further questions, I don't want to. I'm sorry. No, that's fine. Thank you, and thank you to both sides for your helpful arguments this morning. And that will end our week of sitting, and we will be adjourned for a long time. All rise. This court for this session stands adjourned.
judges: FLETCHER, PAEZ, VANDYKE